In this case, we are asking the court to review actions by the district court in rejecting a report and recommendation by a magistrate judge who heard evidence over three separate hearings regarding a McNabb-Mallory issue and a Franks issue. We're also asking the court to review rulings on whether the federal agents in this case properly conducted what they call the knock and talk and whether or not there was a Miranda violation. And we've also raised the issue of a violation or, excuse me, a sufficiency of evidence issue. In the McNabb-Mallory issue, the magistrate judge heard testimony over three days for three separate hearings and concluded that there had been a McNabb-Mallory violation and that the agents in this case had deliberately held Mr. Valenzuela-Espinoza for a period of over six hours while they conducted their investigation and executed the search warrant. And then, having executed the search warrant, took him down to the ICE office and conducted an interview some eight hours after the arrest. The magistrate judge found that, in fact, there had been a violation and he specifically rejected the government's argument that Mr. Valenzuela was being held for an immigration violation. Indeed, what the magistrate judge did was found that the whole focus of the investigation had been drug investigation and that the purpose of holding Mr. Valenzuela for as long as they did was so that the agent would have a chance to interrogate him after the execution of the search warrant. Under those circumstances, the magistrate concluded that there had been a deliberate violation of the McNabb-Mallory rule and recommended that the statement be suppressed. The district court, however, concluded that the magistrate did not take into account other issues besides the time to take the defendant to the courthouse or whether there was personnel available. In fact, we submit the magistrate judge did exactly that. He made specific findings that the courthouse was some 20 minutes away, that the agents, although in the hearing they testified that they were holding him for an immigration violation, contradicted that in their affidavit for the search warrant, which they went to the same magistrate for. Well, but the district judge made her own different findings, right? Aren't those the findings we're supposed to review? I'm sorry? The district judge made her own findings, and aren't those the findings that we're supposed to review, not the magistrate judge's findings? She did make some findings, and I submit to the Court that they were findings regarding credibility, which this Court has held that when there is no de novo hearing by the district court, the district court is bound by the factual determinations of the magistrate. Well, except that these witnesses testified at trial later. They testified at trial. She heard them at the court trial. She did hear them at the court trial, but she made no findings regarding that issue at the court trial. She made a finding with regard to the Miranda issue, that's true, but not with regard to McNabb Mallory or the reason that the defendant was being held. The fact that she heard them at the – during the court trial doesn't cure the problem, unless there's a specific finding? We submit that it doesn't, Your Honor. The magistrate, as I say, did conduct a very lengthy hearing, and actually I think it was something like 17 or 18 pages of findings, which are cited in the brief, with regard to the way the investigation was conducted, the reason this defendant was being held at the scene, and the apparent purpose. Now, the magistrate – excuse me, the district judge does conclude that the statements by the – or the purpose of the detention was supposedly to finish executing the search warrant, but at the magistrate level, the agents had testified that they were holding him on an immigration warrant or an immigration violation, and they held him for that for something like four and a half hours. They don't actually find any evidence of the marijuana violation until after the execution of the warrant, which happened after 4 o'clock. The arrest had actually occurred about 11 o'clock or 11.15. And under the case law in this circuit, we contend that the district court was bound by those factual determinations of the magistrate judge, because she didn't conduct a de novo hearing on her own, and there was no request for a de novo hearing by the prosecution with regard to that. There was also an issue with regard to the statements made by the case agent in the affidavit for the search warrant. As I say, there was a considerable number of hearings, and the magistrate judge at the conclusion of the hearing held that or concluded that the case agent had made deliberate misstatements or falsehoods. What are you talking about now? The Franks issue? The Franks issue, yes. The magistrate judge made a specific finding that the case agent had made those omissions. When the judge considered it, when the district court considered it, she made the finding that one of the statements that the judge had the magistrate judge had chosen not to consider should be considered. And her determination was that the magistrate or that the statement by the case agent was not made with the intent to deceive the court. Now, as I say, the district court held no hearing de novo, but she was making a credibility determination with regard to the statements made by that agent in the affidavit and in his testimony at the motions hearing. And she said, well, that's not his real purpose. And the prosecution argued, well, those statements, the judge didn't consider because they violated Miranda. And they described as mysterious the conclusion by the magistrate judge that those statements were material omissions or material misstatements. I submit to the court that the magistrate judge, having heard the evidence, was free to ignore any or all of the agent's testimony or just parts of it. And the conclusion by the magistrate judge to disregard paragraph 10 of the search warrant affidavit was a credibility determination. He decided, based on the conflicting statements made by the agent, that the agent was not telling the truth. And the determination that he was going to strike that paragraph was an appropriate one, an appropriate exercise of his authority as the magistrate judge hearing the evidence and the testimony to simply disregard it. And for the district court to come in and say, no, I'm going to consider that and decide that the search warrant is a valid one was, in fact, a credibility determination by the district court, which is not authorized to do under the case law in this district. That statement, paragraph 10, is, in fact, the only statement that provided probable cause in support of the search warrant. So it was the crucial finding of fact, if you will, that made that affidavit a valid one in support of the search warrant. And but for that statement, the magistrate judge was correct in concluding that the search warrant, without that statement, failed to provide probable cause. And so we asked the court to conclude that, in fact, the district court had used its discretion in making that finding, having had the magistrate judge already decide to the contrary. The we also made some objections to the magistrate findings, the magistrate judge's findings. And one of them was that the magistrate judge concluded that the approach to the residents in the assistance was a knock-and-talk approach. And, in fact, the evidence that we submit to the court demonstrates the contrary. These were, there were 11 agents in total, nine who approached the house. They approached in full regalia with vests, the bulletproof, the bulletproof vests and ATF or ICE, excuse me, not ATF, ICE or DEA jackets. They approached the house, they surrounded it from the back, and the instructions were don't let anybody out. Now, that is not, we submit to the court, evidence of a knock-and-talk. That is an approach to hold everybody in that house until these agents get a response. Now, what happens is when they do approach, in fact, somebody goes out the back door and the agents in the back pull out their guns and they yell, halt, police, halt. And by that time, the agents in the front run to the side and they see that two of the people have surrendered in the back. They go back to the front of the house. One of the doors is closed and they knock on the door repeatedly and they say, police, come out, or police, open the door. That is not, we submit to the court, a knock-and-talk approach to this residence. That is, like the Elazawi case, a complete surrender of the residence and an arrest of the people within the residence because they're not going to come out unless they come out to the agents. And, in fact, when they knock on the door and order the occupants to come out, that is, in fact, an arrest and they're opening the door is a submission to that obvious display of authority. What was the, specifically, what was the display of authority at the door? In other words, the person entering the door saw? There was three officers at the front door. They all had, as I mentioned, the ICE vests. One of them was armed. I think it was Officer Van Holtzbecki. One of them had a police dog with him and they came out. My client, Mr. Valenzuela, is the one who actually opened the door and Agent Van Holtzbecki told him to come out, asked him some questions regarding his status in the country, and then passed him on to another officer, Officer Moreno, who questioned him further about the contents of the house. And then Officer Van Holtzbecki apparently drew his gun after one of the people that was still in the storage room near the garage would not come out and, in fact, ordered him to come out at gunpoint. That was the display of authority. That and the fact that there was officers in the back, as I mentioned, who also drew their guns and told the people that were in the back to walk towards them so that they could be handcuffed and arrested. So under those circumstances, I say this was not the type of Cormier knock-and-talk approach to a residence and it was not a consensual decision by the occupants of the  The reason I'm saying that is because the officers were not responding to the police officers. They were not responding to the police officers. They were under compulsion to respond because of the way the approach was made and the orders that were given to them. You want to save your last two minutes for rebuttal? I'm sorry, Your Honor. Do you want to save your last two minutes for rebuttal? Yes. Thank you, Your Honor. May it please the Court. My name is Bruce Ferg, assistant United States attorney on behalf of the government in this case, and I'll address the issues that have been raised in the order that the defense counsel presented them. Well, let's start out by your telling us whether this is a usual knock-and-talk situation. According to testimony, it is in the sense that the agents who were actually going to the door approached, as I said quite openly, guns. Yes, they had them, but they were holstered. There was no particular ostentatious display. The so-called police dog was, in fact, a chocolate lab who was only good for It was not some Belgian or German shepherd straining its leash to attack people. And as far as the surrounding, this was simply two other agents behind the fence in the back observing the quad to make sure whether anything happened. And they did not unholster their guns until people started fleeing out of there. The wicked flee when no man pursueth. And so they obviously, at that point, had a reasonable suspicion that something  And they did not unholster their guns until people started fleeing out of there. Now, what about the preconceived plan that, you know, no one was to be let out of the house, which Mr. Leon mentioned? Those subjective intentions, in case of what might happen, don't affect the fact that it was a knock-and-talk when they approached. Wren and all the other cases from the Supreme Court say Fourth Amendment doesn't depend on subjective intentions of the agents. It depends on what objectively they do. And they did exactly what they said. But when they did go up to the door, they were aware that people had been captured already in the back and that they had said police raid and one of them had come back into the house? As I understand the testimony, Van Holtzbecki, who was the lead agent, approached the front door, and the two men who had been watering the front and watching things had previously gone back inside the house. As he came to the door, but before he could actually knock or ring the bell, he heard this commotion in the back, which apparently was the two individuals running out the back  So he went around to the side. The agents back there said, there are these men who have come out. We've got two. There's one that ran back in. So Van Holtzbecki then returned to the front, looked in the front door, where the security screen door was all that was there. The solid wooden door was open. Saw nobody. And so there was also this second door fronting the street at the bottom of the carport. So he then began to go around, and it was at that point that he smelled the odor of marijuana, as well as knowing that this was the general direction that the one person who had run back in the house had gone. And then we were coming to the knock and announce. And he went to that door. And actually, again, I have to disagree with the defense counsel about what was shown. He testified specifically that he knocked, which he's entitled to do. He announced police. He did not demand any entrance. He did not say come out, nor did the agents in the back say come out. That's not supported by anything in the record, nor any findings by the magistrate or the district court. He simply knocked. The defendant voluntarily opened the door, and then voluntarily, and the magistrate specifically found that, stepped outside of the room, at which time this waft of marijuana smoke also came out, further reinforcing the reasonable suspicion and probable cause, and doing what ICE agents do. Van Holsbeek, he asked him, you know, what is your name, where are you from? And he admitted being in the country illegally. So at that point, there were multiple grounds for progressing. Probable cause of drug violation, an actual admission of illegal presence in the country, and so multiple grounds for the agents to continue to do what they appropriately did. So this is not at all the kind of mass invasion that has been suggested by the opening brief. Now, as far as paragraph 10 and the differing views between the magistrate and the district court as to whether that was appropriately considered or not, it's important to recognize that although the magistrate found some particular areas which he dissected in great detail, in which he thought Van Holsbeek, he had omitted things, he did not find anything about paragraph 10 that had been incorrect or false or materially wrong. And so there is this kind of vague statement, oh, I have found Van Holsbeek incredible in some ways, but that does not, under the specific language of Franks, allow the entire affidavit to be thrown out. The magistrate made no finding of any misrepresentation or omission with regard to paragraph 10. And in fact, as I pointed out in the brief, when you actually read his language, the reason he is throwing that out is because he thought that a Miranda violative statement could not be used to support probable cause, which is simply legally wrong. This court's decision in Patterson and the consensus of the Supreme Court in Patane say you can't obviously admit Miranda for substantive purposes of trial, but you can use it for other things, including supporting probable cause. So as far as the delay in the presentation to the magistrate, two things. First of all, the district court found that under the district court's own procedures, the man could not have been seen unless he was presented at the courthouse by 1030 a.m. The arrest did not even happen. And then when you say the district court found. Yes. Judicial notice. There was no evidence of that. Judicial notice, right? Of it, but. Judicial notice on what basis. Like, is there a local court, you know, rule of court or some policy statement or something like that or just something in her head? I found no written document, but the. Did you know about that policy? I'm not one of the trial people, so there are lots of. So it's probably not a proper matter of judicial notices. Yes, it is. Because it comes from an unimpeachable source. What do you mean? The judge? Yes. You mean anything the judge say has to be taken as a judicially noticeable fact? About. In other words, if the magistrate judge says, well, Hornbeck lied, we can take judicial notice of that. And in other words, the judge is not going to take it as a judicially noticeable fact. Because it comes from the judge. When it's an ascertainable fact and the. How is it ascertainable? Well, the defendant didn't object, and that's part of our. My question is, how is it ascertainable? Well, this Court. Is not in the rule book, right? This Court has said that judges are presumed to know the law and to tell the truth. And I can give you cases. Well, this is not a law. It's an informal policy, apparently. Well, I can't say how informal it was. I know you can't say it because it's not a proper subject of judicial notice. Neither can I. And neither can she. Not everything that can be ascertained by judicial notice has to be written down black and white. No, but. The customary procedures of the court. No, no. But it has to be, you know, something that's readily determinable, right? By reference to some, you know, impartial source. And the judge is. No one knows better than the judge. And it's odd, in fact, that the magistrate neglected even to discuss that. Well, it may not have been known to the magistrate. Is this the same magistrate, the one that you take the 20-minute ride that you would take the defendant to, is that the same magistrate who decided this case? Yes, Your Honor. And she didn't know about the policy or didn't think it was worth mentioning? Did not mention it at all. I can't say what was in his mind about knowledge or ignoring. In fact, wouldn't you think magistrate judges would know that part of the court procedure better than district judges because they're the ones that do that work? All I know is what the district court judge said was this is the policy of this court. And that's all we know. But why do you say it's unimpeachable? Well, it's been unimpeached. Well, we believe that district judges tell the truth. We don't believe they're always correct, even about facts. They're human and they make errors, too. And besides, she only said, you know, normally, and she didn't say whether this was a normal case or not. Well, that is a good segue, if you will, to the alternate argument that I want you to consider, which is what the red lightning case is. Well, no, but should we consider believing, accepting or not accepting that there is this policy? I think you should. But I think that you need to come to the same conclusion on an alternate basis. Well, before we get to that, you know, it seems to me that there's not much left of the 6-hour requirement by the time the government gets through this argument. Anybody arrested on one day is going to end up being held 24 hours or more. There's no 6 hours. It's a sort of a the period, whatever it is, the escape period or whatever you call a safe harbor. Safe haven. Safe haven. It's no longer 6 hours. It's about 27 hours. What does that do? I mean, they managed to destroy McNabb Mallory. Who's going to get to a magistrate in 6 hours? Because it's not only getting to the magistrate, it's getting to the magistrate, let's see, at 10 o'clock when the magistrate doesn't start until 2. That's 4 hours. You've got about a 2-hour window before the rule goes into effect. And it doesn't seem to me that that's consistent with the idea that you can question somebody for 6 hours. You can question somebody. He was arrested at 1115, and so you can question him until 2 o'clock the next day, and actually by not the man in this case, about the 10 o'clock. But when does the 6 hours apply? Never, unless you arrest somebody in the middle of the night. Well, all I can say, Your Honor, as was discussed earlier in a prior case, this panel is bound by prior panel decisions, and that's what Red Lightning specifically says. Well, what does Red Lightning say? That was a situation where... Well, Red Lightning, in the first place, they were in the middle of questioning him when the 6 hours ran out. And they said, you don't have to stop in the middle of questioning and say, oh, we're up to the 6 hours. So they had already started the questioning. I don't think Red Lightning says anything about, as I understand the point Judge Reinhardt is mentioning. In other words, let's assume it is so that the court sets its informal policies. Well, you've got to get your paperwork in by 1030, right? And so if that's, you know, enough to, I'll say, toll the Mallory 6-hour period, then you've added 4 hours to it. Right? I mean, that's the problem. I mean, do you start with a paperwork deadline or you actually go to the time of arraignment? So, yeah, I mean, that's one of the problems this year now. If you can set an informal policy at 8, I mean, 10 o'clock, why can't you set it at 8? If you can set it at 8, why can't you set it at 430 the day before? Well, the courts have never construed McNabb-Mallory as an absolute 6-hour period. It's always been with the understanding that there were these reasonable periods that could be subtracted from that based upon availability of the court and the magistrate. It's always based upon the availability of the magistrate. But the rule that seems to be implicit in this judicial notice business is that, well, because the paperwork has to be filed by 1030, the magistrate is not available between 1030 and 2. Right? It's essentially that, yes. That's the rule. Well, and then Judge Reinhardt says you can keep pushing the rule, you know, forward forever. And the 6-hour rule becomes meaningless. The 6-hour rule has always been flexible. And I think that what the district court was saying is that... What are you saying? It's always been meaningless? No, not meaningless, but flexible. Well, let's talk about this case. This was a situation where they certainly could have gotten the individual to the magistrate. You have to agree with that. Could have, yes, ma'am. So is this a case where we should say, well, since they didn't do it, we're not going to apply the 6-hour rule? It is an application of the 6-hour rule, which gives, according to the Red Lightning panel, the government 6 hours in which to do what it needs to do, including appropriate things such as a search warrant to verify when he says, I've got 10 pounds or more of marijuana, to see if there's some validity to that. There's no real difference between that and the questioning. It's a 6-hour safe haven in which the government is allowed to operate. And according to Red Lightning, if at that point the magistrate is not available, which he was not, then it's permissible to take the defendant before the magistrate at the next time when it is reasonably available. So, again, the ---- I agree that Red Lightning is your best case, but I think it's different. But that's what's going to have to be decided. It's, as I said, Red Lightning says if you're in the middle of questioning him, and you don't just stop when you have a ---- when you're in the middle of an interrogation. If that runs over, that's too bad for the defendant. But there were actually breaks in interrogation in Red Lightning as well. No, there was a continuous investigation. They were giving him his lie detector test, and they immediately stopped when he said, yes, I did it. And then they took him off the lie detector and finished the interrogation. But he was also questioned again the next day. That's another issue, right, the next day. Not continuous. And the district court said to him, well, you're getting into dangerous territory, although the panel upheld that, that if you're trying to get him to the magistrate and you can do this while diverted the car when it was on its way to the magistrate, and they said, well, we can't get him to the magistrate in time so we can finish, have another questioning, which, you know, is our decision, although, as the district court judge said, a dubious one. The ---- that's what we have to deal with, is whether you're right or wrong, and you take that rule. And, as I said, there is no such thing as a six-hour rule anymore. You can't think of a case in which you'd have to comply with basic statute. But we can, you know, that may be what we want to say, that forget what Congress said and look at the fact that the courts don't provide magistrates at all until 2 in the afternoon for some unknown reason, and then it doesn't have to be 2 in the morning. So there's no time to get somebody to a magistrate until a day later. Well, I see my time has expired. I would simply conclude by stating that with regard to the other arguments, the government's position is that the district court did not err in finding that the defendant had not, in fact, invoked his Miranda warning simply by being silent. I submitted 28J about the clue and all of that, and that there was, in fact, sufficient independent evidence of the defendant's connection to a drug conspiracy so that his ultimate post-Miranda warning statements were properly admitted against him. If the Court has any other questions, I'd be glad to answer them. Thank you. The magistrate judge in this case was, in fact, the judge, the magistrate judge who was available that day and made the specific finding that he was there at 2 o'clock and they could have brought him over at 2 o'clock. He was in as equally if not a better position to judge whether or not there was unreasonable delay in this instance. The other thing about the prosecution in this case is they seem to suggest that because they're conducting an investigation of a marijuana offense, that they can hold on to Mr. Valenzuela until they finish their investigation and then take him over to court. This came up, actually, during the hearing because at the hearing before the magistrate judge, they argued that they weren't holding him for the marijuana offense. They were holding him because he was in the country illegally, and that that was the purpose and that the detention from 11.15 until 4 o'clock when they actually execute the warrant and find the marijuana, to them, it seems apparently of no concern because by that time they've decided to change what they were going to charge him with. He was never brought before the magistrate judge, and there was no assertion that they were holding him because he was in the country illegally, but they had to explain somehow why they were holding him. And the assertion was, we're holding him because he's illegal, even though they had found no drugs at that point and waited until the investigation was complete. If this court is going to sanction holding people beyond the six-hour period and allowing them to be interrogated while the investigation continues, then we really have lost control, if you will, of the requirement that an arrest be supported by probable cause. There's probable cause to arrest at 11.15. That's what they need to charge him with. If they're going to develop a case later on, that's fine, but they need to take him before the magistrate pursuant to Rule 5A and 3501. Thank you, Your Honor. Thank you. The case just argued will be submitted. The court will stand in recess for the day. Okay. All rise.
judges: Fletcher, Reinhardt, Tashima